Archie Y. SLOAN, Appellant,

v.

Jackie Funderburk SLOAN, Appellee.

No. 5082.

Court of Civil Appeals of Texas, Waco.

Nov. 24, 1971.

Rehearing Denied Dec. 16, 1971.

Hewett, Johnson, Swanson & Barbee, Don Campbell, Dallas, for appellant.

Collie & McSpedden, Walter M. Collie, Jr., Dallas, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from an interlocutory order appointing a temporary receiver. Appellee-plaintiff Mrs. Jackie Funderburk Sloan and Appellant-defendant Archie Y. Sloan were formerly husband and wife, having been divorced on November 26, 1969.

Mrs. Sloan filed this suit against Mr. Sloan to recover a money judgment, to enforce specific performance of a property settlement agreement (and amendment thereto), for adjudication of child support rights, and for a receivership to take charge of the stock in controversy, as more particularly hereinafter described.

The trial court, after hearing testimony on Mrs. Sloan's application for temporary receivership, granted the application and appointed a temporary receiver, from which order Mr. Sloan appeals. We affirm the trial court's action.

At the time of their divorce, the parties entered into a complex written property settlement agreement, wherein Mrs. Sloan waived any child support payments for their two small children. In lieu thereof, Mr. Sloan agreed to pay Mrs. Sloan monthly payments upon the following basis: The parties owned a home place, which they intended to sell, and Mr. Sloan agreed to pay Mrs. Sloan $800.00 per month by way of loan or advancements until they sold their home, and thereafter pay her $400.00 per month; by way of loan or advancements in addition thereto he agreed to pay her $1157.70 per month upon the following basis: the parties owned 78,789 shares of Universal Container stock (worth about $25.00 a share at the time they acquired it), and 500 shares of Minton Rendering Co. stock. The parties had a written escrow agreement whereby they agreed to put this stock in escrow with one Sam Passman as escrow agent, the said Sam Passman being the attorney who handled the divorce for the parties.

It was provided in these written agreements that Mr. Sloan would sell the Universal Container stock when he decided it was economically feasible to do so, and apply the net proceeds thereof towards payment of certain community indebtedness, and to reimburse Mr. Sloan for these loans and advancements made to Mrs. Sloan, and after that the balance would be divided equally between Mr. Sloan and Mrs. Sloan.

The parties originally owned 90,789 shares of Universal Container stock; however, it was provided in the property settlement agreement that Mr. Sloan would trade 12,000 shares of it for the 500 shares

of Minton Rendering Co., which was the total stock of the Minton Rendering Co. This left the 78,789 shares of Universal Container Stock above referred to. After Mr. Sloan made this trade, he turned about 101 shares of the Minton Rendering Co. stock over to Sam Passman the Escrow agent but held back 399 shares of it and never did turn this 399 shares over to Passman until shortly before this temporary hearing and after considerable complaining from Mrs. Sloan's counsel.

At the time of this temporary receivership hearing in July 1971, Mr. Sloan had not made any monthly payments to his wife of any kind for more than a year, the last such money he paid her having been in April 1970.

With reference to the Universal Container Corporation stock, Mr. Sloan had filed a suit in Federal Court against Universal Container Corporation and others, seeking among other things to rescind the transaction wherein he bought this stock and in effect tendering this stock into court for effectuation of such a rescission.

With reference to the Minton Rendering Co. stock, the 500 shares above referred to represented all the stock in this corporation. At or about the time the parties acquired this stock, Minton Rendering Co. appeared to have total assets of about $399,000.00. It was not an operating company, but owned certain land, buildings and fixtures which constituted a meat rendering plant in Fort Worth, Texas. All of this property had a debt and first lien against it in favor of the First National Bank in Fort Worth, Texas, in the original principal amount of $184,663.35; however, this note had been paid down to about $130,000.00 at the time of the temporary hearing.

The Minton Rendering Company had its physical properties leased to Minton By-Products Company, another corporation, for $3333.33 per month pursuant to a written lease agreement. This lease rental income was assigned to the First National Bank in Fort Worth to be applied towards paying off the note which Minton Rendering Company owed this bank. Mrs. Sloan held 9613 shares of Universal Container stock which she agreed to have sold and apply the proceeds thereof on the Minton rendering note owed the bank. The settlement agreement further provided that when the Minton Rendering note owed said bank had been completely paid off, that all of the Minton Rendering stock would become the property of Mrs. Sloan.

After the Minton Rendering stock had been acquired, Mr. Sloan refinanced the debt and lien (owed to the First National Bank in Fort Worth) with Exchange Bank and Trust Company of Dallas, where he got the monthly payments reduced from $3333.33 down to $1500.00. The remaining $1833.33 per month was left in Minton Rendering Co. and was under Mr. Sloan's control. At the time of this temporary receivership hearing, Minton Rendering Co. was in default in its debt to the Dallas Bank, and had only two or three hundred dollars in its bank account. Needless to say, the Dallas bank was exerting pressure on Mr. Sloan to pay up and put this debt and lien on a current basis.

Meanwhile, it should be pointed out that Minton By-Products Company, who was lessee of the Minton Rendering properties, was a corporation owned by Mr. Sloan's first wife (prior to Plaintiff herein) and his son by said first wife, a Mr. David Sloan.

Mr. Sloan agreed with his son that Minton Rendering owed Minton By-Products $71,000.00, much or all of which appears from the testimony to be highly questionable. Mr. Sloan paid his son $10,000.00 out of Minton Rendering funds on this debt, and had an agreement with his son that Minton By-Products would not have to make any further monthly lease payments ($3333.33 per month) to Minton Rendering, until this $71,000.00 debt was repaid. Mr. Sloan admitted on cross examination that $13,145.00 of this $71,000.00 was not in truth owed. Meanwhile Mr. Sloan

bought a new Mercury automobile for $5130.00 out of Minton Rendering funds which he used, loaned himself $10,000.00 (which he testified had been repaid), as well as making other expenditures which appeared to be for his personal use.

At any rate, the record shows that the net result was:

(1.) That Mr. Sloan was over $20,000.00 in arrears in payments which he had agreed to make to Plaintiff-appellee Mrs. Sloan;

(2.) Minton Rendering Co.'s note and lien to the Dallas Bank was in default with no prospect of any income to meet the payments on same, and in danger of foreclosure, in which event all the assets of Minton Rendering would be taken, making the 500 shares of Minton Rendering stock (which was supposed to ultimately go to Plaintiff) worthless:

(3.) Minton Rendering had no prospects of further income from Minton By-Products (which was Rendering's sole source of income), due to Sloan's agreement with his son as above pointed out;

(4.) Minton Rendering had no money except for two or three hundred dollars in a bank account with an alleged $71,000.00 debt owed to Minton By-Products;

(5.) The Universal Container stock was in litigation in the Federal Court; and

(6.) Defendant-appellant was by his own testimony insolvent.

Appellant assails the trial court's order appointing the temporary receiver on eighteen points of error, contending in effect that the trial court abused his discretion in taking such action. After having carefully examined the entire record we overrule appellant's points.

The pertinent portions of Article 2293 Vernon's Ann.Civ.St. are as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. . . . between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

. . . . . .

"4. In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

An application for the appointment of a receiver is addressed to the sound discretion of the trial court, and its action will not be disturbed unless a clear abuse of discretion is shown. See 49 Tex.Jur.2d, "Receivers", Par. 78, page 106.

A receiver is not appointed for the benefit of the applicant, but to receive and preserve the property for the benefit of all parties interested therein. M. Guerra and Son v. Manges (Waco C.A.1969) 442 S. W.2d 441, error dismissed.

In the case at bar, Plaintiff-appellee was justified in her contentions that unless the trial court appointed a receiver, that her undivided interest in the Universal Container stock might well be lost by being placed outside the control of her ex-husband as well as herself, and her undivided interest in the Minton Rendering stock would become utterly worthless.

Her suit was among other things for specific performance of the property settlement agreement, in which she was to be ultimately entitled to one-half of the net proceeds from sale of the Universal Container stock, and was to be ultimately entitled to all the ownership of Minton Rendering stock. Her pleadings were therefore adequate to state a cause of action for

relief to which the receivership was ancillary.

■ From the record the trial court was authorized to believe the subject stock in which the parties were jointly interested was in danger of being lost or materially injured.

The trial court did not abuse his discretion in appointing a temporary receiver.

Appellant's points and contentions are overruled.

Affirmed.