**Phillip M. KRUMNOW, Jr., Individually, Phillip M. Krumnow, Jr. as Independent Executor of the Estate of Phillip M. Krumnow, Sr., Deceased and as Trustee of the Krumnow Family Trust and Trustee of the Phil Krumnow, Inc. Employees Pension Trust, Appellants,**

**v.**

**Pam KRUMNOW, Bettie Mendenhall, Individually and as Trustee of the Krumnow Family Trust and Norma Cora Withem, Individually and as Trustee for the Krumnow Family Trust, Lott State Bank, Stephen Boykin, Court Appointed Successive Administrator, Dona Harris, Appellees.**

No. 10–04–00143–CV.

Court of Appeals of Texas, Waco.

Aug. 24, 2005.

Special Note Aug. 31, 2005.

Rehearing Overruled Oct. 11, 2005.

George D. Gordon, Baggett, Gordon & Deison, Conroe, Ron Butler, Marlin, for appellants.

W. Randall Harrell, Jones, Harrell & Popelka PC, Temple, Bryan F. Russ Jr., and Molly Ann Hedrick, Palmos, Russ, McCullough & Russ, Hearne, J. David Dickson, Beard, Kultgen, Brophy, Bostwick Dickson, Waco, Stephen A. Boykin, Dona E. Harris, Franklin, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This is an appeal from an order of the district court regarding the Estate of Phillip Morris Krumnow, Sr. ("Phillip") and the Krumnow Family Trust ("Trust"). Appellant, Phillip M. Krumnow, Jr. ("Krumnow"), appeals in four issues: the district court abused its discretion by (1) appointing a receiver, (2) vacating a deed of trust lien and security interest, and (3) removing Krumnow as independent executor; and (4) the district court erred in denying Krumnow's plea to the jurisdiction.

## BACKGROUND

Phillip died testate in 2002 leaving a Last Will and Testament ("Will") executed in 1993 and the inter-vivos Trust that had been established in 1993. Krumnow, the named independent executor in the will and the trustee of the existing Trust, commenced a probate action in the county court of Falls County, Texas. The county court signed an Order admitting the Will to probate and granted Krumnow letters testamentary. The Will provided that upon Phillip's death, all of his property would immediately pass to the Trust except for personal items bequeathed to Phillip's surviving spouse, Pamela Beth Colley Krumnow ("Pamela").

After the Will was admitted to probate, Pamela and Phillip's two daughters, Bettie Lanelle Mendenhall ("Bettie") and Norma Cora Withem ("Norma"), filed an application to remove Krumnow as independent executor and trustee and for appointment of a successor independent executor and successor trustee. Thereafter, the county court issued a transfer order to the district court under Probate Code section 5(b). TEX. PROB.CODE ANN. § 5(b) (West Pamphlet 2002).

On February 12, 2003, after the case was docketed in the district court, Krumnow filed an original counter-claim (petition) in the district court asking the court to interpret and construe the Trust. His petition alleges that the district court has jurisdiction over the probate estate and the Trust. He claims that Pamela, Bettie, and Norma are not cooperating with him as executor and trustee in creating an accounting of property belonging to the respective probate and trust estates. He requests (a) damages, (b) return and an accounting of all property belonging to the probate and trust estates, (c) an order that Pamela vacate the residence that she claims as a homestead, (d) attorney's fees, (e) interest, and (f) costs.

On March 17, 2003, the district court denied the application to remove Krumnow as independent executor and trustee and confirmed his appointment as independent executor and trustee. On March 27, Pamela filed a motion to return property, for injunctive relief, and for sanctions against Krumnow. In this motion, Pamela specifically sought removal of Krumnow as executor and appointment of a successor executor. On April 17, the district court sent a letter appointing Stephen Boykin as successor independent executor. On April

25, Norma and Bettie filed an original petition for partition. On May 14, the court signed the Order removing Krumnow as independent executor and appointing Stephen Boykin as successor executor.

On June 12, Krumnow filed a motion to set aside and vacate the order signed May 14, 2003. On April 30, 2004, the court sent notice to the attorneys for all interested parties of a hearing scheduled for May 25 for all "matters affecting the Krumnow estate and trust" including "appoint a receiver and order the property sold." On May 20, Krumnow filed a plea to the jurisdiction. The district court held a hearing on these and other motions on May 25. A trial amendment regarding appointment of a receiver was filed at the hearing, and Krumnow objected. On June 2, the district court signed an order (1) appointing Dona Harris as receiver and ordering him to sell all of the named real estate; (2) vacating the deed of trust lien and security interest Krumnow had entered into as trustee; (3) denying Krumnow's motion to set aside the May 14, 2003, order and confirming Stephen Boykin as successor executor; and (4) denying Krumnow's plea to the jurisdiction. Krumnow now appeals from this Order. Appellees include Pamela, Bettie, Norma, Lott State Bank (a creditor), Boykin, and Harris.

## JURISDICTION

■ We must inquire into our own jurisdiction, even if it is necessary to do so *sua sponte*. *Normand v. Fox*, 940 S.W.2d 401, 402 (Tex.App.-Waco 1997, no writ). The jurisdiction of the district court, which affects our jurisdiction, has been disputed since the county court transferred the contested matter to the district court. We will address the district court's jurisdiction over the probate estate and over the trust

estate and then review our jurisdiction of the interlocutory appeals.

### JURISDICTION OF THE DISTRICT COURT

The district court had two separate proceedings pending in a single cause number: the probate matter and the trust matter.

### *Probate Estate*

■ The constitutional county court's authority to transfer a case to a district court includes only the transfer of a "contested matter." TEX. PROB.CODE ANN. § 5(b) (West Pamphlet 2002).[1] The petition filed in the county court sought removal of Krumnow as both executor of the estate and trustee of the Trust. However, the county court had no jurisdiction over any aspect of the Trust. TEX. PROP.CODE ANN. § 115.001(a) (Vernon Supp.2004–05) (district court has exclusive jurisdiction over trust proceedings). Thus, the "contested matter" before the county court, eligible for transfer, was whether to remove Krumnow as the independent executor. TEX. PROB.CODE ANN. §§ 5(b), 222 (West Pamphlet 2002). Although the petition also sought appointment of a successor representative for the estate, that issue could not come before the county court or become a contested matter until a remand of the district court's determination of the petition to remove the existing executor. *Id.* § 220 (West Pamphlet 2002). Thus, we find that with respect to the probate proceeding, the district court had authority to hear and determine only whether Krumnow should be removed as independent executor.

### *Trust Estate*

■ Krumnow believes that the district court did not have jurisdiction over any

---

1. All references in this opinion are to the Probate Code as it existed in 2002, the date of the county court's order transferring the "contested matter" to the district court.

matters regarding the Trust because it is an inter vivos trust. He argues that the Trust is not subject to the probate jurisdiction of the district court, which is limited to contested matters regarding the probate administration. However, we find that the petition Krumnow filed on February 12, 2003, invoked the jurisdiction of the district court over all Trust matters after February 12. *See* Tex. Prop.Code Ann. § 115.001(a).[2] Thus, we may have jurisdiction to review issues one and two depending on a review of our jurisdiction with respect to interlocutory appeals.

### Jurisdiction of this Court

■ Generally, we have appellate jurisdiction over an interlocutory appeal only when expressly provided by statute. *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998) (per curiam); *Chase Manhattan Bank v. Bowles,* 52 S.W.3d 871, 878 (Tex.App.-Waco 2001, no pet.). Jurisdiction to review an interlocutory order is either specified in a particular statute or under the general interlocutory appeal provision in the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a) (Vernon Supp.2004–05).

### *Issue one: Receiver*

■ An interlocutory appeal is permitted from an order appointing a receiver. *Id.* § 51.014(a)(1). Thus, we have jurisdiction to review the June 2, 2004, order with respect to the appointment of the receiver (issue one).

### *Issue two: Deed of trust lien and security interest*

■ Krumnow, as the trustee, executed a deed of trust lien on trust property to secure payment of legal fees. Krumnow has not asserted the applicability of any statutory provision permitting an interlocutory appeal under these facts. We find that the vacating of this trustee action by the district court does not fall within the parameters for interlocutory review under Section 51.014 of the Civil Practice and Remedies Code. *Id.* § 51.014(a). Thus, we do not have jurisdiction to review the June 2, 2004, order with respect to the vacating of the deed of trust lien. We dismiss issue two.

### *Issue four: Plea to the Jurisdiction*

■ An interlocutory appeal from an order denying a plea to the jurisdiction is available by statute only to governmental agencies. *Id.* § 51.014(a)(8). Thus, we have no jurisdiction to review the June 2, 2004, order with respect to the denial of Krumnow's plea to the jurisdiction. We dismiss issue four.

### *Issue three: Executor*

■ Krumnow argues that the district court, after signing the March 17, 2003, order denying the application to remove him as executor and trustee and confirming him as executor and trustee, should have transferred the case back to the county court for further proceedings consistent with its ruling because the contested issue had been resolved. He argues that the district court did not have jurisdiction to sign the May 14, 2003, order removing him as executor and appointing a successor executor. Krumnow asserts that the removal was improper because it failed to state any grounds for removal and there was no personal citation to notify Krumnow of a hearing on removal.

---

**2.** It would have been clearer if Krumnow had filed a separate petition under a different district court cause number than the cause number for the contested probate matter that was transferred from the county court.

Appellees argue that Krumnow's appeal of the May 14, 2003, order is untimely. They also argue that the June 2, 2004, order does not extend Krumnow's timetable for appeal.

The district court's order of March 17, 2003, denied the application to remove Krumnow as executor and confirmed him as executor. Ten days later, Pamela filed a motion to return property and specifically requested injunctive relief to remove Krumnow as executor and appointment of a successor executor. Forty-eight days after this motion was filed, the district court ordered the removal of Krumnow as executor and appointed Stephen Boykin as successor executor.

A district court has plenary power to vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. Tex.R. Civ. P. 329b(d). A motion to modify, correct, or reform a judgment must be filed prior to or within thirty days after the judgment is signed. *Id.* 329b(a), (g). A district court has thirty days after a timely-filed motion to modify, correct, or reform a judgment is overruled, either by a written and signed order or by operation of law, to vacate, modify, correct, or reform a judgment. *Id.* 329b(e), (g). A motion to modify, correct, or reform a judgment is overruled by operation of law if it is not determined by written order signed within seventy-five days after the judgment was signed. *Id.* 329b(c). The time to appeal runs from the date the modified, corrected, or reformed judgment is signed. *Id.* 329b(h). A notice of appeal must be filed within thirty days after a judgment is signed. Tex.R.App. P. 26.1(a). A notice of appeal must be filed within ninety days after the judgment is signed if any party timely files a motion for new trial, a motion to modify the judgment, a motion to reinstate, or a request for findings of fact and conclusions of law. *Id.*

■ We find that Pamela's March 27, 2003, motion to return property was a timely-filed motion to modify, correct, or reform a judgment because it requests removal of Krumnow as executor and appointment of a successor executor that was denied by the district court's prior order of March 17, 2003, and it was filed within thirty days after the order was signed. *See* Tex.R. Civ. P. 329b(a), (g). Because the district court did not expressly overrule this motion, the court's plenary power was extended to June 30, 2003, to vacate, modify, correct or reform the judgment. *See id.* 329b(c), (e), (g) (seventy-five days is May 31, 2003, and thirty days thereafter is June 30, 2003). The district court modified its March 17, 2003, order on May 14, 2003, which was fifty-eight days later. Thus, the district court had plenary power to modify its prior order and to remove Krumnow as independent executor. However, because any issues regarding a successor executor were not transferred from the county court, the district court did not have authority to appoint a successor executor.

On June 12, 2003, Krumnow filed a motion to set aside and vacate the order signed May 14, 2003. In the absence of an order overruling it, this motion to modify the judgment would extend the time to file a notice of appeal to August 12, 2003. Tex.R. Civ. P. 329b(h); Tex.R.App. P. 26.1(a) (90 days after the modified order of May 14, 2003, was signed). No notice of appeal was filed. Thus, the May 14, 2003, order became final on August 12, 2003, and we have no jurisdiction to entertain an appeal from it.

■ The Probate Code states: "Upon resolution of all pending contested matters, the contested portion of the probate proceeding shall be transferred by the district court to the county court for further proceedings not inconsistent with the or-

ders of the district court." Tex. Prob.Code Ann. § 5(b). Thus, once the contested matter of whether to remove Krumnow as executor was resolved, the district court should have transferred this contested portion of the probate proceeding back to the county court for further proceedings not inconsistent with the district court's removal of Krumnow as executor. *See id.*

We dismiss in part and sustain in part issue three. The removal of Krumnow as executor in the May 14, 2003, order is final. We vacate the appointment of the successor executor, Stephen Boykin, in the May 14, 2003, order. We will remand the probate portion of this cause to the district court for transfer back to the county court.

We now turn to the issue concerning the district court's appointment of the receiver.

### ISSUE ONE: RECEIVER

We review the court's order appointing a receiver under an abuse of discretion standard. *See Balias v. Balias, Inc.,* 748 S.W.2d 253, 256 (Tex.App.-Houston [14th Dist.] 1988, writ denied); *Carroll v. Carroll,* 464 S.W.2d 440, 447 (Tex.Civ. App.-Amarillo 1971, writ dism'd); *Strategic Minerals Corp. v. Dickson,* 320 S.W.2d 882, 884 (Tex.Civ.App.-Austin 1959, writ ref'd n.r.e.). A court may abuse its discretion by ruling arbitrarily, unreasonably or without reference to any guiding rules and principles, or without supporting evidence. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). When conducting an abuse of discretion review, we examine the entire record. *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex. 1996); *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987).

A court may appoint a receiver in any case in which a receiver may be appointed under the rules of equity. Tex. Civ. Prac. & Rem.Code Ann. § 64.001(a)(6) (Vernon Supp.2004–05). A trial court may on its own motion appoint a receiver without an application by any party *when the facts justify* the appointment to preserve or protect the property in litigation. *Cross v. Cross,* 738 S.W.2d 86, 87 (Tex.App.-Corpus Christi 1987, writ dism'd w.o.j.); *B & W Cattle Co. v. First Nat'l Bank of Hereford,* 692 S.W.2d 946, 951 (Tex.App.-Amarillo 1985, no writ). A receiver is appointed to receive and preserve the property for the benefit of all parties interested in the property. *Sloan v. Sloan,* 474 S.W.2d 272, 275 (Tex.Civ.App.-Waco 1971, no writ).

Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize. *Independent Amer. Savings Assoc. v. Preston 117 Joint Venture,* 753 S.W.2d 749, 750 (Tex. App.-Dallas 1988, no writ). A trial court has the discretion to appoint a receiver ex parte and without notice under certain circumstances. There are stringent guidelines under which this action may be taken:

In recognition of the fact that appointment of a receiver without notice is one of the most drastic actions known to law or equity and should be exercised with extreme caution and only where great emergency or imperative necessity requires it, our courts have uniformly been reluctant to grant such harsh relief. *Morris v. North Fort Worth State Bank,* 300 S.W.2d 314 (Tex.Civ.App.-Fort Worth 1957, no writ). It has been held that appointment of receivers on ex parte application is to be made only in exceptional and extreme cases, *Solomon v. Mathews,* 238 S.W. 307 (Tex.Civ.App.-Amarillo 1922, no writ); and that ap-

pointment of receiver without notice to adverse party is one of the most drastic remedies known to the court and should be exercised only in extreme cases where right thereto is clearly shown and only then in exercise of great caution by the courts *when the status of the property cannot be maintained and rights of applicants protected pending a hearing by a restraining order or temporary injunction or any less drastic remedy.* *Head v. Roberts,* 291 S.W.2d 483 (Tex.Civ.App.-Fort Worth 1956, no writ); *Marion v. Marion,* 205 S.W.2d 426 (Tex.Civ.App.-San Antonio 1947, no writ); *Wilkenfeld v. State,* 189 S.W.2d 80 (Tex.Civ.App.-Galveston 1945, no writ); *Keep 'Em Eating Co. v. Hulings,* 165 S.W.2d 211 (Tex.Civ.App.-Austin 1942, no writ); *Great Eastern Oil Co. v. Lewis,* 49 S.W.2d 527 (Tex.Civ.App.-Dallas 1932, no writ); *Hunt v. State,* 48 S.W.2d 466 (Tex.Civ.App.-Austin 1932, no writ). A receiver may be appointed without notice or opportunity for adverse party to be heard only in extreme cases wherein there is *great emergency and imperious necessity for immediate appointment.* *Johnson v. Williams,* 109 S.W.2d 213 (Tex.Civ.App.-Dallas 1937, no writ); *Ames v. Ames,* 64 S.W.2d 1067 (Tex.Civ.App.-Eastland 1933, no writ); *Bankers' Life & Loan Ass'n v. Cremona,* 66 S.W.2d 762 (Tex.Civ.App.-Dallas 1933, no writ).

*Best Investment Co. v. Whirley,* 536 S.W.2d 578, 581 (Tex.Civ.App.-Dallas 1976, no writ) (emphasis added).

Texas Rule of Civil Procedure 695 requires that "[e]xcept where otherwise provided by statute, no receiver shall be appointed to take charge of property which is fixed and immovable. *When an application for appointment of a receiver to take possession of property of this type is filed,* the judge or court shall set the same down for hearing and notice of such hearing shall be given to the adverse party by serving notice thereof not less than three days prior to such hearing." TEX.R. CIV. P. 695 (emphasis added). Real estate is "fixed and immovable property" within the meaning of Rule 695. *Continental Homes Co. v. Hilltown Property Owners Assoc., Inc.,* 529 S.W.2d 293, 296 (Tex.Civ.App.-Fort Worth 1975, no writ). Appointment of a receiver without giving notice to adverse parties to be heard *on the application* is reversible error. *Preston 117 Joint Venture,* 753 S.W.2d at 750; *North Side Bank v. Wachendorfer,* 585 S.W.2d 789, 792 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ).

Krumnow argues that the trial court abused its discretion when it appointed a receiver without an application for receivership being on file and without the statutory three-day notice of a hearing. Appellees argue that a written application is not necessary to validate a trial court's appointment of a receiver. Appellees also argue that the record shows sufficient notice of the hearing regarding appointment of a receiver.

When the court gave notice of the May 25, 2004, hearing, it listed appointment of a receiver as one of the purposes of the hearing. Because no application to appoint a receiver was on file at this point, the trial court raised this issue on its own motion. However, both the trust property and the probate property were subject to management by a fiduciary—the trustee or the personal representative of the estate. Thus, we find that these facts do not justify the appointment, on the court's own motion, of a receiver to preserve the trust and probate property. *See Cross v. Cross,* 738 S.W.2d at 87; *B & W Cattle Co.,* 692 S.W.2d at 951.

In the alternative, we will review the notice issue. Krumnow did not receive

notice to be heard *on Appellee's application* to appoint a receiver filed at the May 25, 2004, hearing. *See* Tex.R. Civ. P. 695; *Preston 117 Joint Venture,* 753 S.W.2d at 750; *North Side Bank,* 585 S.W.2d at 792. Because we do not find that the status of the property could not be maintained by the fiduciaries (trustee and successor executor), or that the rights of all interested parties could not be protected pending a hearing by a restraining order or temporary injunction or less drastic remedy, or that there was a great emergency and imperious necessity for immediate appointment, we hold that the trial court erred in appointing a receiver without notice to Krumnow to be heard *on the application. See Whirley,* 536 S.W.2d at 581. The trial court abused its discretion in appointing a receiver. *See Balias,* 748 S.W.2d at 256; *Bocquet,* 972 S.W.2d at 21.

Issue one is sustained. We reverse the section of the trial court's June 2, 2004, order appointing the receiver and render judgment dissolving the receivership. We remand the trust portion of this cause to the district court for further proceedings consistent with this opinion.

## CONCLUSION

We do not have jurisdiction to review issues two and four, and thus, dismiss them.

We dismiss issue three in part and sustain it in part. We vacate the section of the June 2, 2004, order denying the motion to set aside and vacate the May 14, 2003, order. We vacate the appointment of the successor executor, Stephen Boykin, in the May 14, 2003, order. The order removing Krumnow as executor in the May 14, 2003, order is final.

We sustain issue one and reverse the section of the trial court's June 2, 2004, order appointing the receiver. The receivership is dissolved.

We remand the cause with instructions to return the contested probate matter to the county court for further proceedings consistent with the May 14, 2003, order and this opinion, and for further proceedings concerning the Trust consistent with this opinion.

Chief Justice GRAY present but not voting.[3,4]

## SPECIAL NOTE

TOM GRAY, Chief Justice.

It appears that it may be necessary for the Texas Supreme Court or the Texas Court of Criminal Appeals to decide if two judges on a three judge court of appeals can issue an opinion and not wait for the third judge's considered vote in an appeal. *See Texas Parks and Wildlife v. E.E. Lowrey,* 155 S.W.3d 456 (Tex.App.-Waco 2004) (order) (Gray, C.J., dissenting) (not designated for publication) (attached as Appendix A). The answer may or may not depend on whether the case was argued. *Id.;* Tex.R.App. P. 41.1(a) ("If a case is decided without argument, three justices must participate in the decision.")

In this appeal, I picked up the draft opinion and started my review no less than 10 times. Each time I delved deeper into the issues but ultimately realized there were complex, weighty issues; issues so important to the administration of estates,

---

3. Chief Justice Gray requested that the issuance of this opinion be delayed. Justices Vance and Reyna rejected that request and voted to issue the opinion. Chief Justice Gray will file a special note at a later date.

4. This is an accelerated appeal. Chief Justice Gray has had the opinion since April 26, 2005.

particularly the independent administration of estates in Texas, a process in which Texas has been a leader, that I must have more time to research and consider these issues before I voted on the proposed opinion for the case. It also occurred to me that we have another pending case in which the issues, while different, at this juncture appear to be sufficiently related to the issues pending in this appeal that I believe the two cases should be considered together. At the very least, the opinions need to be simultaneously developed so that the parameters of the issues may be fully resolved without creating a conflict.

Finally, under intense pressure to "vote" in this case, I dedicated the substantial time necessary to complete an initial review. And the problems I found were, in my estimation, enormous. I wrote a lengthy memorandum regarding my observations and concerns. In addition, I made some suggested technical and editorial changes. For the most part, the technical corrections were made and the editorial suggestions rejected. But none of my substantive concerns in the memorandum were addressed.

Now having pondered these problems for several months, and having taken several days for my review culminating in the memorandum, you can imagine my disappointment, and surprise, at receiving a response on the next business day which summarily rejected my concerns and reminded me the case would issue on August 24, 2005.

This is pretty amazing if you consider the implications. It tells me that it does not matter what the answers are to the questions I raised, or what further investigation of the record or research of the case law on these issues may reveal or support. The opinion will issue.

So should I knock myself out to get everything else done that I am responsible for, complete the extensive, additional research needed to vote on this particular appeal, for the purpose of trying to meet an artificial deadline set by the other two judges on this Court? I have done this for the last several months and the result is that I have devoted more and more of my time to dissenting and concurring opinions and have been unable to devote time to writing on my own cases. And frequently I find the draft opinions in my cases must be converted to concurring or dissenting opinions.

I need to spend this time working on cases assigned to me, older cases, cases of higher priority under the statutes and rules, so that those parties may get a disposition of their appeal. It is not that I do not want to participate in this opinion; it is that, at this time, this case does not have the priority to put it before all my other responsibilities.

So, while I cannot research all the issues and vote on the propriety of the judgment, let me lay out the general scope of what the issues are that need to be researched and possibly decided. I realize this is not a cogent, tight piece of legal writing on specific legal issues, and on occasion may seem more like my rambling thoughts. In a way, that is exactly what this is. But given the time constraints the majority has put me under, I have no alternative.

And I will focus this analysis primarily on the deficiency in the opinion that primarily attracted my attention—the decision refusing to review the removal of Philip Jr. as executor and the further refusal to review the propriety of the appointment of a successor executor. This issue looms large in probate practice because it deals primarily with the transfer of contested matters between the constitutional county court and district court, with the determination of what is a final order,

when must an order be appealed, and the consequence of failing to appeal such an order on the ability to address those issues again in the same litigation.

First, and maybe more important than any other issue in this case, is the question regarding the transfer of probate matters to district court. Indeed, the issue could very well be broad enough to ask; if a trial court could decide an issue where everyone appearing before the trial court had taken all the statutory or rule-required procedural prerequisites, does the trial court lack jurisdiction to decide the issue if those procedural prerequisites have not occurred? Because of *Dubai* and its progeny, my tentative answer to this is, if the issue is one the court has, or could have, subject matter jurisdiction of and the parties necessary for the decision are before the court without objection to exercising jurisdiction over them or the subject matter, then the trial court should be able to decide the issue presented and that decision should be binding on the parties. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71,75 (Tex.2000). I recognize there are some gross generalizations here, but please consider my temporal limitations and not view me too harshly.

To reach this issue as it relates to considering our jurisdiction to review the removal of Phillip Jr., the majority opinion hangs precariously by a single thread. That thread is whether a pleading filed by the appellees can be properly characterized as a motion to modify, correct, or reform a judgment, otherwise sometimes known generally as a motion for new trial. Characterizing a pleading for a party is dangerous business. Occasionally, courts do it when it is so obvious that the *Lil' Abner* Rule applies (any fool can see).

But characterizing a document should be done with extreme caution. And if it is clear what the document is, it should not be characterized as something else. This is especially true if the party who created the document has never characterized it in that particular manner. After all, it is that party's document. The corollary is also true. If it is clear what the document is not, then it certainly should not be characterized as what it is not.

To properly understand what document the majority is relying on, we have to travel back in time to November 12, 2002. On this date three persons, Pamela, Bettie, and Norma, referring to themselves as applicants, filed a pleading entitled "Application to Remove Independent Executor/Trustee and for Appointment of Successor and First Amended Petition." By way of this pleading, the applicants alleged all sorts of mismanagement by Phillip Jr. and sought a wide variety of relief from him. In all, a dozen delineated requests were included in the prayer. The applicants were the widow and two daughters of the deceased, Krumnow. And just for good measure, they also **alleged** that the other brother, Ray, is an unsecured creditor of the estate and "an alcoholic who would be unable to handle estate affairs."

A hearing was held on February 12, 2003 on the above referenced application and some other motions. On March 17, 2003, the trial court signed an order regarding the issues addressed at the February 12 hearing. The order denies the application and confirms Phillip Jr. as the independent executor of Krumnow's Estate and trustee of Krumnow's trust. The order also contains some other provisions of relief for Pamela.

Then a mere ten days after that order was signed, Pamela, the widow, acting alone as the applicant, files the All–Important–Motion ("AIM"). The opinion summarily concludes that it is a motion to modify, correct, or reform, that is, a mo-

tion for new trial, of the March 17, 2003 order. I disagree.

The analysis to resolve the question of whether this document is a motion for new trial begins with the title. The title of the AIM is "Motion to Return Property, For Injunctive Relief and Sanctions." The title does not sound like the trial court is being asked to reconsider its order which confirmed Phillip Jr. as the independent executor and trustee.

Next, I examined the parties to the motion. The AIM is brought only by Pamela—the widow—and not by the daughters who were previously applicants in the motion for removal. So, the applicants in the two motions are different. Also, the AIM is brought against Phillip Jr., individually and as executor of the estate of Krumnow, but is not brought against Phillip Jr. as trustee. Thus, the parties to the March 17, 2003 order are not the same parties against whom the AIM seeks relief.

Next, I examined the allegations of the motion. The AIM confirms that Phillip Jr. was appointed independent executor on June 18, 2002. The motion proceeds to complain about the executor's interference with the widow's homestead rights. Then there is an allegation specifically referencing the application for removal, but clearly implying that it is still pending and is a separate request for relief. This allegation is

Applicant is a party to the *underlying* suit to Remove Independent Executor and to Appoint Successor, which is *pending* in this Court.

(Emphasis added). The pleading continues by alleging that if the independent executor's bad conduct does not stop, she will "lose all of her personal property converted by Respondent, and will incur substantial expense in finding a new place of residence."

The motion then has a bold heading "Elements For Injunctive Relief." The first paragraph under this caption, a single sentence, is the only paragraph that in any way might touch on the issue of removal of Phillip Jr. as independent executor, but in no way could it be considered as being related to his removal as trustee. The paragraph states

In light of the above described facts, Applicant seeks removal of the Executor and the Appointment of a successor executor pursuant to § 149C, Tex. Prob. Code Ann.

First, it is important to note that section 149C of the Probate Code is for removal of an independent executor for a number of grounds, and the ground under which Phillip Jr.'s removal is sought is never specified.

But before too much emphasis is placed on this lone sentence in a nine page pleading, the remedies and prayer sections of the pleading deserve careful attention. Nowhere in the roughly three pages devoted to "Remedy" and "Prayer" does it ever mention removal of the independent executor. Instead, the Remedy and Prayer clearly seek to maintain the status quo, and the status quo is that Phillip Jr., at that time, is the appointed and confirmed independent executor AND trustee.

So that you are not reliant on my characterization of the "Remedy" and "Prayer" as not seeking to modify the order denying removal, I will set them out verbatim:

### REMEDY

19. Applicant has met her burden by establishing each element which must be present before injunctive relief can be granted by this court, therefore Applicant is entitled to the requested temporary injunction.

20. In order to preserve the status quo during the pendency of this action, Applicant requests the Court to temporarily enjoin the Respondent, PHILLIP M. KRUMNOW, JR., his agents, employees, attorneys or anyone acting on his behalf (a) to immediately turn over to the Applicant all keys to all of the new locks which he installed on the doors to the Applicant's residence; (b) to immediately return all personal property he has removed, or caused to be removed, from the Applicant's residence, or to account for that property and immediately pay to the Applicant the full replacement value of any property removed by him which cannot be returned; (c) to cease interfering with the rights of the Applicant to the use and enjoyment of the Applicant's residence (i.e., the homestead property); (d) to immediately return and cause to be reinstalled in proper working order the pump to. the well on the Applicant's property; and (e) after the pump is properly reinstalled, to at all times remain at least 1000 yards away from the Applicant, all members of her family, and the Applicant's place of residence.

21. It is essential that the court immediately and temporarily enjoin the Executor, PHILLIP M. KRUMNOW, JR., his agents, employees, attorneys or anyone acting on his behalf (a) to immediately turn over to the Applicant all keys to all of the new locks which he installed on the doors to the Applicant's residence; (b) to immediately return all personal property he has removed, or caused to be removed, from the Applicant's residence, or to account for that property and immediately pay to the Applicant the full replacement value of any property removed by him which cannot be returned; (c) to cease interfering with the rights of the Applicant to the use and enjoyment of the Applicant's residence (i.e., the homestead property); (d) to immediately return and cause to be reinstalled in proper working order the pump to the well on the Applicant's property; and (e) after the pump is properly reinstalled, to at all times remain at least 1000 yards away from the Applicant, all members of her family, and the Applicant's place of residence. It is essential that the court act immediately because the Respondent has already ousted the Applicant from her residence and removed her personal property from the residence, and is currently interfering with the Applicant's peaceful use and enjoyment of her property.

22. Respondent's actions were done in utter disregard of the Applicant's rights, the jurisdiction of this Court and its prior Orders and without any basis in law or fact. Respondent's actions were done solely for the purpose of harassment and to inconvenience and cause great expense to the Applicant. As such, Respondent's actions are sanctionable by this Court under Texas Rules of Civil Procedure 13 and 215, and also under this Court's inherent authority to regulate it's [sic] docket and oversee the disposition of the matters pending before it. Therefore, Applicant moves that this Court impose a monetary sanction in the sum of $5,000.00 personally against the Respondent, PHILLIP M. KRUMNOW, JR. and direct him to pay that amount to the Applicant within ten (10) days of the entry of the Court's Order.

23. As a further sanction, Applicant moves that this Court direct the Respondent, PHILLIP M. KRUMNOW, JR., to pay the Applicant's Attorney's [sic] the sum of $2,000.00 as their reasonable and necessary attorney's fees

incurred in responding to this flagrantly illegal conduct.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, PAMELA KRUMNOW, Applicant herein, respectfully prays that:

A. PHILLIP M. KRUMNOW, JR., Respondent, be noticed to appear and answer herein;

B. A temporary injunction will issue after hearing to PHILLIP M. KRUMNOW, JR., Respondent, enjoining him and his agents, employees, attorneys or anyone acting on his behalf (a) to immediately turn over to the Applicant all keys to all of the new locks which he installed on the doors to the Applicant's residence; (b) to immediately return all personal property he has removed, or caused to be removed, from the Applicant's residence, or to account for that property and immediately pay to the Applicant the full replacement value of any property removed by him which cannot be returned; (c) to cease interfering with the rights of the Applicant to the use and enjoyment of the Applicant's residence (i.e., the homestead property); (d) to immediately return and cause to be reinstalled in proper working order the pump to the well on the Applicant's property; and (e) after the pump is properly reinstalled, to at all times remain at least 1000 yards away from the Applicant, all members of her family, and the Applicant's place of residence.

C. The Court sets a reasonable bond for the temporary injunction;

D. The Court impose a monetary sanction and direct the Respondent, PHILLIP M. KRUMNOW, JR., to pay to the Applicant the sum of $5,000.00 within ten (10) days of the entry of the Court's Order;

E. The Court impose as a further monetary sanction that the Respondent, PHILLIP M. KRUMNOW, JR., to pay to the Applicant's attorney's [sic] the sum of $2,000.00 as reasonable and necessary attorney's fees incurred as a result of his flagrantly illegal actions

F. For such other and further relief, in law or in equity, to which Applicant may be justly entitled.

If a reader is reading in context, it is clear that what the motion is stating is not an allegation seeking the removal, but is related to a necessary element to obtain a temporary injunction—it is a description of the underlying dispute on which the applicant for the injunction believes she will prevail. In this one sentence, the applicant explains to the court what the underlying litigation involves and in the next sentence of the motion, asserts that she will likely prevail on this pending issue. In this context, the preceding sentence cannot reasonably be viewed as a motion for new trial of the order signed March 17, 2003. It has never been characterized as a motion for new trial by anyone other than a majority of the justices on this Court.

There is another impediment to the cursory analysis and conclusion that the Motion to Return Property is a motion for new trial. The AIM was granted in the order of May 14, 2003, against Phillip Jr. *in his capacity as independent executor.* The order goes on to remove Phillip Jr. as independent executor effective as of the date of the hearing, the April 8, 2003 hearing, not the February 12, 2003 hearing. The order recites that the court is ruling on the Motion to Return Property and is rendered after "having read the pleadings, received and heard the evidence and heard the arguments of counsel...." Nowhere does it reference the February 12, 2003 hearing, the evidence received, or the

March 17, 2003 order. This is not the type recitation and effective date that would be used if the trial court thought it was ruling on a motion for new trial of the issues considered at the February 12, 2003 hearing as embodied in its March 17, 2003 order.

Was the "Motion to Return Property, for Injunctive Relief and Sanctions" a motion for new trial of the denial of the "Application to Remove Independent Executor/Trustee and for Appointment of Successor and First Amended Petition"?—I think not. The "Motion to Return Property, Injunctive Relief and Sanctions" as it is called in its own footer, is just that, a motion seeking the return of property to the widow, an injunction to maintain the status quo, and a motion seeking the imposition of sanctions. But the majority "find[s]that Pamela's March 27, 2003 motion to return property was a timely-filed motion to modify, correct, or reform a judgment because it requests removal of Krumnow as executor and appointment of a successor executor that was denied by the district court's prior judgment of March 17, 2003, and it was filed within thirty days after that order was signed." In their analysis, it does not matter what was intended by the applicant, what the document is titled, who the parties are, what remedy was requested, or what the prayer for relief was; it must be solely that one sentence referencing the underlying suit for removal that controls the purpose of the pleading. You really have to be looking for a result to grasp onto a thread so fine.

So where does this leave me in my analysis? With the need to then resolve a lot more issues.

If this motion was not a motion for new trial, it did not extend the time to file an appeal, or more importantly, it did not extend the time for the court to modify its March 17, 2003 order, what is the impact on the validity of the court's May 14, 2003 order which the majority characterizes as final but not timely appealed? This is why I need more time for analysis before I can vote. I am simply uncertain where this leaves the overall analysis based upon the issues as presented.

But if my analysis is correct, that the motion to return property did not extend the trial court's plenary power, I know where I would next turn my attention. I would try to determine which of two issues might be dispositive—which one might be the silver bullet that can easily and properly dispose of this appeal.

## SILVER BULLET NUMBER ONE?

The first issue is whether the trial court would be barred by res judicata from considering the evidence presented or available up through the previous hearing date, February 12, 2003, if the issue of removal is subsequently considered. I mean, let's face it, just because Phillip Jr. is not removed on one date does not mean that regardless of what he does, he can never be removed. The question would thus be, if at a subsequent hearing the issue of removal is again *properly* presented to the trial court or raised by the court on its own motion, is the trial court prohibited from considering available evidence that predates the last time the trial court considered the issue and refused to remove the executor? This is a thorny question worth serious research and consideration.

As for this Court, in what I could characterize as an analogous situation, we have determined that the earlier evidence cannot be considered. In the context of the termination of parental rights, we have held that if the rights are not terminated by the date set by statute, the State can re-file its petition based on the same conduct in the previous petition but cannot

remove the child based on the same conduct as that upon which the prior removal was sought. *See In re Ruiz,* 16 S.W.3d 921, 927 (Tex. App.–Waco 2000, orig. proceeding). Given the nature of those proceedings, that seems odd, as it would also seem odd to prohibit consideration of all of the prior conduct of an executor when evaluating his removal. My point here is that this merits a deeper analysis of the policy issues behind the principles of res judicata to determine if that doctrine should or should not be applied when the fact finder is again presented with the question of whether to remove the independent executor.

Another issue I raised in my memorandum regarding the timeliness of the notice of appeal depends upon the import of multiple bankruptcy proceedings. Due to the manner and timing in which three successive bankruptcy proceedings were filed and the effect of a party filing bankruptcy on the running of timetables, *see* Tex. R.App. P. 8.2, I have been unable to determine on the record currently before us, if, under the majority's analysis, the ruling on the motion for rehearing filed by Phillip Jr. on June 12, 2003 was ever overruled by operation of law. If not overruled because of the restarting of the timetable each time the automatic bankruptcy stay was lifted, the motion was overruled by written order on June 2, 2004. Notice of appeal was then filed July 1, 2004. Thus, because a timetable that had not expired begins anew when a proceeding is reinstated, it is entirely possible that the trial court's June 2, 2003 order was timely appealed.

### SILVER BULLET NUMBER TWO?

The second, but related, potentially dispositive issue would be to consider whether there was some other theory under which the trial court could have rendered an order of removal of Phillip Jr. as independent executor. To consider this issue, we also need to examine whether the alternative theory was one that the parties or the trial court had complied with the necessary procedural prerequisites for consideration and use of that alternative theory.

Of course, the most obvious alternative theory is that the trial court can remove an independent executor under section 149C on its own motion. Tex. Prob.Code Ann. § 149C(a) (Vernon 2003). The grounds for such removal under this section could be summarized generally as mismanagement of the estate or failure to comply with a required duty.

There are, however, several impediments to the application of this section. First, no one has argued the trial court purported to use this statute. Second, there is nothing in the record to indicate that the independent executor, Phillip Jr., was ... "cited by personal service to answer at a time and place fixed in the notice...." *Id.* Further, the order does not give the cause for removal or order the surrender of letters of administration previously issued to the independent executor being removed. Tex. Prob.Code Ann. § 149C(b) (Vernon 2003).

This leads me to the question of whether the trial court could have obtained or maintained jurisdiction over the independent executor for purposes of considering his removal from that capacity if the record does not show personal service as required by the statute. This has elements of both subject matter jurisdiction, removal of the independent executor by the district court, and personal jurisdiction, jurisdiction over the person of the independent executor.

The question of subject matter jurisdiction over the issue of whether to remove the independent executor and personal jurisdiction over the person, Phillip Jr., in his capacity as independent executor, does

not end, however, with, nor is it entirely dependent upon, resolving the issue of whether the motion to return property could be treated as a motion for new trial. This issue, the question of what subject matter and what persons the trial court could exercise jurisdiction over, manifests itself again because of the transfer, or failure to remand and transfer, issues back and forth between the county court and the district court. The majority concludes, based in part on its determination that the motion to return property was actually a motion for new trial of the March 17, 2003 order, that the trial court reformed its judgment, confirming Phillip Jr. as independent executor and denying the motion to remove him by ordering his removal and the appointment of a successor. But the majority concludes the trial court did not have the "authority to appoint a successor executor."

As an aside, there is a practical problem about the removal and appointment of a successor executor in this case. If Phillip Jr. was effectively removed on April 8, 2003, who was responsible for everything that happened to the Estate from that date until his successor was duly qualified? The successor did not qualify until June 8, 2004, which was after the trial court overruled Phillip Jr.'s motion to set aside the May 14, 2003 order. Everyone treated the May 14, 2003 order as being in limbo until the trial court ruled on Phillip Jr.'s motion. Query: Does the parties' treatment of the order as not being final, but one over which the court maintained jurisdiction, impact the analysis?

Now back to the primary question— deciding whether the trial court obtained and maintained subject matter and personal jurisdiction over the removal of Phillip Jr. as independent executor. This is an issue worthy of substantial analysis. Why is it that the trial court did not have the authority to appoint a successor executor but had the authority to remove one? The majority tells us that the trial court lacked this "authority" "because any issues regarding a successor executor were not transferred from the county court" to the district court. *See* TEX. PROB.CODE ANN. § 5(b)(*amended by* Act of 2003, 78th Leg., ch. 1060, § 2). According to the majority, "once the contested matter of whether to remove Krumnow as executor was resolved, the district court should have transferred this contested portion of the probate proceeding back to the county court for further proceedings not inconsistent with the district court's removal of Krumnow as executor." This statement raises more issues than it resolves.

The first may be nothing more than semantics, but it is a semantical problem courts have struggled with for decades. *See Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003); *Ex parte Seidel,* 39 S.W.3d 221 (Tex.Crim.App.2001). What do we mean when we say a court has, or does not have, the "authority" to do something? But more importantly, what is the consequence of a court doing something it does not have the authority to do? If a court exceeds its authority, is it a judicial error subject to review and correction upon proper preservation and presentation of the error to an appellate court? Or if a court exceeds its authority, is its action void? Voidness has serious and potentially long term implications. Normally, voidness is a consequence of a court being without the jurisdiction to take some action.

As used in context, and to have the consequence described by the majority, they must be using it in the context of jurisdiction. This issue, just another of many deserving more analysis, requires an examination of the Probate Code, amendments to the Probate Code, the motions to remove the two different probate proceed-

ings that had been filed in the county court to the district court, the orders transferring both proceedings, and the consolidation of those two probate proceedings by the district court. For my purposes in this special note, it is sufficient to say that the change in the Probate Code which was apparently intended to result in only the contested issues being transferred to district court, probably did not contemplate a transfer of the entire probate proceeding, but there is nothing that expressly prohibits such a transfer. More importantly, there is no real guidance to tell us what happens if, subsequent to the amendments, the entire proceeding is transferred to the district court, as was previously done.

Remember that if I am right on the AIM not being a motion for new trial and the majority is right that once the transferred contested issue is decided the district court loses its "authority" to do anything other than to remand the transferred issue back to the county court, the district court did not have the "authority" to reconsider the removal issue after its first decision became final and thus should have remanded the issue to the county court.

Further, a complete analysis of the issue of what a district court can rule on when a probate proceeding, or part of a probate proceeding, has been transferred to it from a constitutional county court, is going to get back into the issues of subject matter jurisdiction and personal jurisdiction. If the parties bring before the trial court an issue that was not transferred, but would be transferred if filed in the constitutional county court, that the trial court clearly has the authority to decide if certain procedural prerequisites would have been fulfilled, and nobody that has submitted their persons to the jurisdiction of the court complains about the failure to fulfill those procedural requirements—must the trial court's ruling be void if there is no error in

the merits of that ruling? This is the dispositive question on the appointment of the successor executor. This issue also warrants further analysis. In this instance, such a ruling is being set aside because the issue was not filed in the constitutional county court and then ordered transferred to the district court. But oops, the entire probate proceeding, in fact the entirety of both probate proceedings, had been transferred to the district court so there would have been no proceeding pending in the constitutional county court in which to file any new issues which arose.

And if you really want to get into confirming that the majority analysis is lacking and incomplete, the issue of appointing a successor was filed in the constitutional county court on October 10, 2002 and was pending when Phillip Jr. filed his motion to transfer the entire matter to the 82nd District Court on October 29, 2002. The "proceeding" was transferred by an order signed on the same date. Thus, if it is the relevant criteria, this issue was clearly a pending and contested matter at the time of the transfer of the entire proceeding to district court.

## IN CONCLUSION

It will not serve the purpose of this special note to go into a full and detailed discussion of why I have not given this case the time required to fully resolve it. If for any reason a court upon further review decides it wants to know more details than explained herein, I will provide further explanation upon request. I believe it is sufficient to state in summary that in my discretion, I chose to work on cases that were older, that otherwise had a higher designated priority than this case, and it was my decision to delay my analysis in this case until I could devote an adequate block of time to it for a full

analysis. Further, there is pending before us, another case involving some of the same complex issues regarding jurisdiction that are presented in this case. It is my belief that these two cases should be developed together. A majority of justices disagreed; so they are kicking this case out the door before fiscal-year-end. I note that the issue-related case is much older. And finally, I do not believe it is appropriate to decide one case and to develop and issue a precedential decision by which the Court will be bound, without each member of the Court being able to give full consideration to the issues in each of the cases then pending with interrelated issues.

So, for all of the reasons given, I can say no more than I am present but not prepared to vote on the merits of this case as of the date the opinion of only two members of the panel is being issued. And because that opinion has issued, I will not spend further analysis on the issues unless directed to do so by the Texas Supreme Court or the case is reversed or our judgment set aside and remanded to us from the Texas Supreme Court for further consideration of the merits.

### POSTLUDE

As I was completing work on this Special Note, footnote 4 appeared in the majority opinion. That footnote states: "This is an accelerated appeal. Chief Justice Gray has had the opinion since April 26, 2005." Frankly, in setting my work priorities, I had overlooked that "[t]his is an accelerated appeal." I was not reminded of that by the author of the opinion until the addition of the footnote approximately four hours before the opinion was to be released.

Normally, when new information comes to my attention, I revise my prior work based on that information. But I leave the Special Note undisturbed and must now comment on why I overlooked this issue and, more importantly, what additional problems lay buried in the majority opinion. Due to time constraints, it will also be necessary to identify, but leave unresolved, issues that deserve further study.

First, until the addition of footnote 4, it would have been improbable to discern that this was an accelerated appeal by reading the draft opinion. This is primarily because there is an extensive discussion of the time in which a trial court has plenary power to modify a judgment and the timing of filing a notice of appeal. Included in the discussion is the impact on the timing of filing the notice of appeal and the trial court's plenary power if a motion for new trial is filed. Of course, this discussion is all about ordinary appeals—not accelerated appeals. If this is an accelerated appeal, the party aggrieved by the trial court's order has 20 days to file a notice of appeal. Tex.R.App. P. 26.1(b). In an accelerated appeal, a motion for new trial does not extend the time in which to file the notice of appeal. Tex.R.App. P. 28.1.

So my response to footnote 4 is, quoting Adam Sandler in *The Wedding Singer*, "Once again, things that could have been brought to my attention YESTERDAY!" *The Wedding Singer* (New Line Cinema 1998) (motion picture).

But of course, the problem here is understandable and is caused by the multiple issues on which the order being appealed was rendered. One of the issues, the appointment of a receiver, is an interlocutory order that is expressly made appealable. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(1) (Vernon Supp.2004–2005). The portions of the order which captured my attention and concern—regarding the appointment or removal of an independent executor—is a final order subject to direct appeal and is not considered interlocutory.

*In re Estate of Vigen,* 970 S.W.2d 597, 598–599 (Tex.App.-Corpus Christi 1998, no writ).

This raises an interesting issue: Should there have been two notices of appeal, two briefing schedules, two judgments—one on an accelerated timetable and one on a regular timetable? Whatever the answer to that question, "macht nicht"—it matters not; but I would have tried to adjust my priorities had I been reminded that at least part of this appeal is accelerated, even if the part I was focused on was not. But in defense of the author of the majority opinion, he did not know what issue I was stuck on until my July memorandum to him. Finally, in closing this postlude, I realize that four months is an eternity to an individual litigant. But if the choice is the wrong answer fast versus a judgment that has been properly considered by three judges in a deliberative process as the constitution, statutes, and rules contemplate, I, for one, will take the carefully considered judgment. A carefully considered judgment still may be erroneous, but it stands a lot better chance of being right than having been issued because of an artificially created deadline like a fiscal-year-end or the departure of a briefing clerk.

### APPENDIX A

This Appendix is from *Texas Parks and Wildlife v. E.E. Lowrey,* No. 10–02–00317–CV, 2004 Tex.App. LEXIS 9824, * 16–17 (Tex.App.-Waco Nov. 3, 2004) (order) (Gray, C.J., dissenting) (not designated for publication).

### DISSENTING OPINION TO ORDER WITHDRAWING OPINION

On July 21, 2004, over ninety days ago, we issued an opinion in this accelerated appeal that had been on file since November 14, 2002. A motion for rehearing was filed and we requested a response. We denied the motion on October 5, 2004. Now, because of issues and developments not raised in this case, a majority of the Court wants to change the result. I have not had the time, or the opportunity, to consider adequately the merits of the changes in the new opinion. Moreover, I believe that we should notify the parties of the issue that is being re-determined and ask that they fully brief it before we reconsider it.

Under the circumstances, I believe that it is unnecessary to withdraw the prior opinion. Therefore, I dissent from the order of November 3, 2004, withdrawing our opinion of July 21, 2004. Further, there is no need to issue a new opinion immediately. If the issue is of such importance—and especially since we take an entirely different direction—I think we should only reconsider it after notice to the parties and an opportunity for the parties to brief the issue fully; and only then give it the full consideration that it deserves by the full Court. After all, if the issue merited the withdrawal of the opinion, surely it could wait long enough to allow adequate consideration of such an important issue, an issue so serious that the Court would withdraw the opinion on its own motion. Apparently, for some reason not explained to me, issuance of the opinion cannot wait. I still have not had time to evaluate the new opinion in a manner that I believe to be appropriate under the circumstances; thus, I am not prepared to participate in the hasty issuance of an opinion, with no compelling need to do so, under this artificially created and imposed deadline.

So, in a case that was not argued, two justices persist in their effort to issue an opinion in which only those two justices have participated. This is a direct violation of Rule of Appellate Procedure 44.1(a): "If the case is decided without

argument, three justices must participate in the decision." TEX. R. APP. P. 44.1(a). It may be that the two of them can withdraw the opinion with only two votes. But there is no room for doubt that it takes three to issue the new opinion.